IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

CAROL G. EDWARDS,

        Plaintiff,

vs.                                   Case No. 6:22-cv-689-PGB-DCI

CITY OF ALTAMONTE
SPRINGS, FLORIDA, CITY OF
ALTAMONTE SPRINGS CODE
ENFORCEMENT BOARD,
JOHN DOE and JANE DOE,

        Defendants.

_____

## <u>VERIFIED SECOND AMENDED COMPLAINT</u>

COMES NOW, Plaintiff, Carol G. Edwards, by and through the undersigned attorney, and sues the Defendant, City of Altamonte Springs, a political subdivision of the State of Florida, and brings this action for damages arising out of a violation of her civil rights, and negligence causing damage, and for cause would state:

## <u>PARTIES</u>

1.    Plaintiff, Carol G. Edwards (hereinafter referred to as "Plaintiff"), is a resident of Altamonte Springs, Seminole County, Florida.

2.    Defendant, City of Altamonte Springs (hereinafter referred to as

"City"), is a political subdivision of the State of Florida.

## VENUE

3.      Venue is proper in Seminole County because the causes of action alleged herein accrued in Seminole County, Florida, and damages are in excess of $50,000.00.

## GENERAL ALLEGATIONS

4.      This is a cause of action for damages resulting from the deprivation, or threat thereof, under color of law to wit, Altamonte Springs City Code, Chapter 162 of the Florida Statutes of a right, privilege and immunity secured to Plaintiff by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Section 2, Article I, Section 9, and Article I, Section 23 of the Florida Constitution. Damages and other relief are sought under the provisions of 42 U.S.C. § 1983 and 1988, and declaratory relief is sought pursuant to the provisions of title 28 USC section 2201(a). This Court has jurisdiction pursuant to Title 28 U.S.C. § 1331 and 1343. Plaintiff also claims relief under the Civil Rights Attorney's Fees Award Act of 1976, Title 42 U.S.C. § 1988.

5.      The acts alleged herein occurred in the City of Altamonte Springs, Florida, all under color of law and Plaintiff seeks damages in this controversy in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs, together with other related attorney fees and costs.

## FACTUAL ALLEGATIONS

6.  Plaintiff and her husband, Troy M. Edwards, Sr. (hereinafter referred to as "the Edwards") in 1987 purchased Lot 253 in Town & Country Estates subdivision in Altamonte Springs, FL, situated on Prairie Lake and commonly referred to as 253 Robin Court, Altamonte Springs, Florida 32701.

7.  Subsequently, in 1988, the Edwards acquired a permit for and did construct a family residence on the subject property. The Edwards' lot is located in a cove of a large lake situated in Altamonte Springs, FL known as Prairie Lake, which was surrounded by waterfront homes, docks, and facilities for float planes to land and take off.

8.  Subsequent to the construction of the home, the Edwards applied for and received a permit in April of 1989, to construct a dock, attendant storage facility and other water related facilities. (**Exhibit 1**). The Edwards enjoyed the use and benefit of the dock and its facilities with family members, friends, and neighbors. Troy M. Edwards, Sr. passed in 2010, and thereafter Plaintiff, family and neighbors continued to utilize the dock and its facilities.

9.  In 2017, Hurricane Irma damaged the subject dock to the point that it needed repair and maintenance. Plaintiff, then the sole owner of the property, contacted the City and inquired about the need for a permit to repair the dock. She was advised that it was not necessary to acquire a permit to repair hurricane damage,

a common practice of most cities and counties in the aftermath of hurricane damage. However, Plaintiff, through a misunderstanding, included in the repair of her dock, new and extra features that were not included in the original dock.

10.     The initial 1989 plans for the dock were prepared without the benefit of a survey, and without a defined location in mind, but only to allow Plaintiff to enjoy her littoral rights. The dock was situated on her lot so that the dock extended outwards from the shoreline to water deep enough to accommodate outboard motor use, as well as swimming, and jumping off the dock.

11.     The plans were submitted to the City in 1989 and approved for construction. The plans clearly showed there was no definitive location of the dock, except as to the waterline, the plans noting 20+/- feet in one direction and 20+/- feet in the other direction with an imagined shoreline. (**See Exhibit 1**).

12.     In the course of the initial construction of the dock, the City inspectors were aware of the dock location and a proposed boat ramp by virtue of the plans previously provided to the City for the construction of the Edwards' home. The inspectors approved the construction of the dock and issued a final permit to the Property Appraiser's office, as was procedure to put a property on the tax roll. (**Exhibit 2**).

13.     The original dock was constructed so that Plaintiff had use of her littoral rights, and she was able to park her boat perpendicular to the shore to allow the prop

to be in the water and give access to the navigable water. Twenty-eight (28) years after Plaintiff constructed the dock, the neighbors, James Randy Myers and his son, Daniel P. Myers (the "Myers") purchased the adjacent Lot 251 *with* knowledge and a survey that the dock intruded into the Lot 251 that the Myers were purchasing.

14.    Without first discussing the intrusion with the Plaintiff, James Randy Myers complained to the City that Plaintiff's dock intruded into their property and without talking with the Plaintiff and without doing any inspection of the dock or taking any measurements, the City inspector, Tom Dalton, told James Randy Myers that the dock would be torn down and thereafter notified the Plaintiff of a code violation, construction of the dock without a permit.

15.    In 2017, after Plaintiff spoke to the City with regard to the permit to repair and maintain the dock, she relayed the information to her son, Mitchell Edwards ("Mitchell") and an architectural and engineering firm, who with a mistaken belief, assumed that the repair of the dock included the renovations of a previous storage room shown on the initial plans that was converted to a small bathroom with a sink and toilet. However, Tim Perry, the engineer, knew that a permit would be required for the electrical and plumbing before the City would sign off on the final inspection.

16.    Plaintiff met with the City and was advised that no permit had been issued for the construction of the initial dock, and additionally the dock did not meet

the 10-foot side yard setback, and therefore the repair and maintenance undertaking was illegal, and the dock had to be taken down and destroyed, but at the time the dock repair was complete, except for a final inspection.

17.    In March 2018, Plaintiff's engineer submitted an application for a waterfront improvement, which included a request for a waiver to the 10-foot side yard setback. The application included photographs of existing neighborhood docks which did not meet the setback. The City responded with a requirement that the Plaintiff provide a survey that showed the dock not extending into the neighboring property. The only way a survey could be done showing the dock did not extend to the neighboring property was for the dock to be removed. (**Exhibits 3 & 4).**

18.    Plaintiff presented evidence that the City had lost many of the building department records because of a hurricane in the early 1990's. A large number of records stored in an offsite basement at Cranes Roost had been subjected to severe flooding and numerous boxes of documents were destroyed. The City had no way of proving that it had issued a permit, nor that it had or had not completed the inspection process.

19.    In September 2018, Plaintiff's representatives met with the City Building Department, Code Board personnel, City manager and others to discuss the situation. At the meeting, Plaintiff produced a copy of a permit issued by the City in 1989, together with plans for the original dock construction. City official took

Plaintiff's copy of the permit and made a copy for City records. The City has acknowledged that until that time, the City had no file or records on the dock permit. (**Exhibit 5**).

20.    Once confronted with a copy of the permit which had been issued, the City then took the position that the permit was not finalized because all of the inspections had not been completed, and thus the permit had expired and was void. This was an arbitrary position because the City could not prove there was not a final permit issued, but this allowed the City to impose arbitrary demands and Constitutional conditions.

21.    The City took the position that the dock construction was to be considered new residential construction and subject to all of the current City codes. To that end, the City used Google Earth, a tool that had not been available years ago, to check property lines and determine that a portion of the dock, approximately three (3) to six (6) feet extended into the adjoining Lot 251, and to show that the current dock was located in a different location and had been expanded from the original 1989 plans. Although Google photos show the dock in its original 1989 location, City staff insisted the dock had been relocated when the hurricane repairs were done. (**Exhibit 6**).

22.    Plaintiff's consultants communicated and met with City staff on numerous occasions in an effort to meet the City's demands without destroying the

dock. The City's response to plans submitted was to always add arbitrary conditions, most of which had never been required of other parties seeking a dock permit. When Plaintiff submitted a survey, the City would add additional requirements to the survey causing further delay. During the surveying process, the surveyor came down with an illness and passed away shortly thereafter. Retaining another surveyor was a major task because the surveyor would have to do all the survey work all over again and surveyors were hard to find during the boom time.

23.    From the initial plan review, the City noted that it did not have a permit on record and demanded current building codes be met. The City demanded the Plaintiff remove any indications on the plans that showed that there was an "existing boathouse and dock". Such a demand was arbitrary and would only prevent a subsequent reviewer of the plans from knowing of the existing conditions or anything about the prior 1989 permit. A surveyor by law is required to note on a survey all existing easements, buildings, docks and even bike trails.

24.    With each plan submitted and reviewed, comments were received. The City took the arbitrary position that even though the City had no records on file for the previous dock permit, therefore there was no final inspection for the permit, and the dock and boathouse would be considered new structures and required to meet all new City codes.

25.    City staff knew that the condition to meet the 10-foot side setback

would result in a complete destruction of the dock. Plaintiff asked for a waiver of the 10-foot side setback, but City staff advised a waiver would have to go before the Board of Zoning Appeal, which would take months, and City staff would oppose the waiver. It was clear that further efforts to try and waive the 10-foot side setback would be futile.

26.     The original contractor of the dock advised the City that in 1989 the dock was located in its position to prevent obstruction to the navigable waterway into the cove. The City was aware that a proposed dock showed on the initial 1988 plans submitted for the construction of the house. The City was also aware that the proposed dock had been placed in a position on the original plans so as not to obstruct navigable waterway. Notwithstanding, the City review noted that the dock could not be relocated because the repaired dock would obstruct the navigable waterway. The City's interest in the public's right to a navigable waterway was misplaced.

27.     Plaintiff received a Notice of Hearing to appear before the Code Enforcement Board on August 9, 2018. Plaintiff retained an attorney to represent her before the Board, but upon information and belief, because Code Board hearings are unilaterally scheduled, there is often a conflict with attorneys' and experts' schedules.[1] The attorney had a conflict and requested and received a continuance.

---

[1] The attorney in question is not the undersigned.

During the continuance time, the Plaintiff continued to work with the City and submit new, alternate, and additional plans and designs.

28.     Subsequently, Plaintiff received a second notice for the September 2018 Code Board hearing, and her attorney again communicated with Building Department head, Anthony Apfelbeck, and advised Plaintiff was trying to work with the City and would move that portion of the dock that extended into the neighbor's property. The dock would be moved backward and shortened, Plaintiff would file for a permit, and work with City staff to promptly permit the work, and Plaintiff would work properly to resolve the issues with the City. With that, the attorney asked to be excused from the hearing, and staff responded that "the staff review of "Edwards" specific design proposal would take place during the permitting process." The City further advised that the Code Enforcement Board would be directed solely to compliance with the code by acquiring a permit and passing final inspections, and that there was no need for counsel or Plaintiff to attend the Code Board meeting. (**Exhibit 7**).

29.     At the September 13, 2018 Code Board meeting, following the attorney's letter, the Plaintiff's attorney was advised by the City Building inspector that neither he, nor the Plaintiff, needed to appear for the September meeting. Based on the City's statement, no one appeared on behalf of the Plaintiff at the Code Board meeting and a Findings of Fact, Conclusions of Law and Order  was issued in which

the Plaintiff was directed to correct the violations within ninety (90) days or face a $100.00 per day fine. Compliance included:

> "removing the boat dock and house structure completely and disposing of all construction materials or obtaining Building, Electrical and Plumbing permits for the boat dock and house structures and pass all final inspections related to each permit." **Composite Exhibit 8**.

Obviously, that is not what Plaintiff's attorney understood, because it was known that compliance with current codes i.e.: the 10-foot side setback would result in the complete destruction of the dock, and the taking of Plaintiff's property.

30.    There were City staff members who did not believe that Plaintiff's attorney understood the permitting process. But none took the occasion to explain to Plaintiff's attorney what was entailed in the permitting process. It is obvious that when the attorney said "promptly" he did not expect that it would take twenty (20) plus months to issue a permit. (**Exhibit 9**).

31.    After the September Code Board Order, Plaintiff continued to prepare and present plans to the City, and again requested a waiver to the 10-foot side setback. Plaintiff pointed out that more than 60% of the docks on Prairie Lake were on the property line as opposed to a setback. (**Exhibit 10**). The City advised Plaintiff's counsel that a waiver would require going through the Board of Zoning

Appeal and stated the City would oppose any waiver.

32.    The City was intent on preventing Plaintiff from acquiring rights to rebuild or permit her dock. The City went so far as to consider and did call in the Department of Environmental Protection "as another way to go at the owner". (**Exhibit 11**)

33.    Plaintiff's engineer did contact the Department of Environmental Protection and was advised that Plaintiff did not qualify for a General Permit but would have to apply for an Individual Permit. The issuance of an  Individual Permit would likely be subject to the issuance of the Altamonte Springs permit. However, the engineer was told that if the dock was under 1,000 square-feet, a permit may not be needed at all, and it might be a waste of time and effort to pursue a Department of Environmental Protection permit at that time.

34.    After submitting five (5) sets of plans, it became clear to the Plaintiff and her consultants that she was up against a force that, for one reason or another, wanted the dock removed.   It became obvious to the engineering and architectural firms that the City was not even reviewing the plans, and when they did, they added requirements that had already been addressed and completed.

35.    Plaintiff's civil rights claims are not subject to exhaustion of remedies through the state or federal administrative process, and as previously noted, the futility of further dealing with the City was clear.

36.    Upon the entry of the Code Board Order on April 11, 2019, Plaintiff could have, but not required, taken appellate action in the Circuit Court at that time because her actions were ripe. Notwithstanding, Plaintiff submitted plans for a fourth review, and subsequently two (2) months after the April 11, 2019 Order, Plaintiff was still trying to work with the City. **Composite Exhibit 12.**

37.    Plaintiff's right to challenge the administrative assessment of the fine was ripe, an administrative agency cannot rule on constitutional issues and to challenge the administrative ruling may jeopardize Plaintiff's constitutional claims.

38.    Because the issues were ripe because of the Futility Exception, Plaintiff timely brought this action to the Circuit Court.

<u>**COUNT I**</u>
<u>**ESTOPPEL**</u>

39.    Paragraphs 1 through 38 are realleged as if fully set forth herein and are incorporated by reference.

40.    The City issued a building permit for the subject dock in 1989 and it was and is a valid 1989 permit. Plaintiff's consultant advised the City that the dock had been permitted and approved and entered into the Seminole County Tax Roll in 1990. Notwithstanding such advice, the City, through its arbitrary and capricious actions, ignored Plaintiff's consultant. (**Exhibit 13**).

41.    An easy review of the Property Appraiser's procedure in listing properties on the tax roll would have revealed that no property is listed unless the

Property Appraiser receives a finalized building permit from the City. Even after being advised, the City came back with a flippant answer that it was not the City's responsibility to check with the Property Appraiser's Office before imposing the onerous procedures and conditions upon Plaintiff.

42.     Plaintiff relied upon the representations on the face of the 1989 permit and confirmed by the Property Appraiser's Office. The City's efforts to deny Plaintiff use and benefit of the permit should be estopped from denying that there was a valid permit issued in 1989.

43.     The City cannot deny that a permit was issued thirty (30) years ago and accepted by the Seminole County Property Appraiser's Office. The Plaintiff's reliance upon the permit issued by the City in 1989 results in the City being estopped from denying the existence of a valid permit and requiring Plaintiff be bound by building department rules and regulations enacted after the 1989 permit was issued.

44.     The City's failure to recognize the validity of Plaintiff's 1989 permit has resulted in damages to the Plaintiff, by denying that the permit was final and there was not a final inspection causing the Plaintiff to submit five (5) engineering drawings that would not have been necessary had the City acknowledged the 1989 permit was valid. The denial of the permit validity caused the permitting process to be delayed resulting in loss of contracts and other damages attributable to delay.

45.     Plaintiff relied on the City's issuance of the 1989 permit and the City

denying the validity of the permit has forced the Plaintiff to undergo engineering costs to present five (5) applications in an effort to come up to the City's current building codes, which are based on current residential development and not a dock.

WHEREFORE, Plaintiff prays this Court to declare:

a)     The City issued a finalized permit to the Property Appraiser's office;

b)     The City cannot treat the subject dock as new construction;

c)     The City, after repeatedly refusing to issue a permit based on the false premise that Plaintiff did not have a finalized 1989 permit, should be required to issue a permit after proper inspections, for the construction and repair of the Plaintiff's dock to its original condition;

d)     Find Plaintiff is entitled to damages for delay and the cost of the two-year permitting process;

e)     An award to Plaintiff for her reasonable attorney fees and costs incurred in bringing this action; and

f)     Such other and further relief as this Court deems just and proper.

## COUNT II
## DISCRIMINATION IN VIOLATION OF 14TH AMENDMENT

46.     Paragraphs 1 through 38 and 43 through 44 are realleged as if fully set forth herein and are incorporated by reference.

47.     The City discriminated against the Plaintiff in the permitting process in violation of Plaintiff's 14th Amendment rights for equal protection.

48.    Plaintiff is in a class of numerous waterfront property owners who now have docks, boathouses, and wharves and further waterfront applicants who may want to construct a dock adjacent to their property. Some docks have been in place for years, and it was pointed out to the City that there are a number of docks that do not meet the side yard setback on the very cove where Plaintiff resides.

49.    Plaintiff was singled out and was required to meet the 10-foot side yard setback, which is a discriminatory and unconstitutional condition which would result in the loss of Plaintiff's riparian and statutory rights.

50.    Plaintiff's dock is located on her property line and extends into the navigable water. As a condition to get a permit and avoid the destruction of her dock, she was told she had to apply to the Zoning Board for a waiver to side setback, but the City would oppose the waiver.

51.    Because waterfront property owners have riparian or littoral rights, there is no need to apply for a waiver in their case because Plaintiff's littoral rights in this case are superior to the 10-foot side yard setback.

52.    No other waterfront property owner has ever been required to seek a waiver to place the dock on the property line inside of the required 10-foot side yard setback.

53.    Plaintiff's engineers worked with the City for over twenty (20) months, submitting drawings to comply with all of the unconstitutional conditions made by

the City. Among the engineering drawings offered were:

    a.    Remove portions of boathouse and dock that encroach on adjacent property and relocate boathouse. (See plans submitted June - September 2018). (**Exhibit 14a**).

    b.    Remove the portion of the dock that intruded into adjacent property, remove toilet and lavatory from dock and upgrade electrical service, as had been the status of the dock for over 30 years (June 2018-March 2019) (**Exhibit 14b**).

    c.    Demolition of portion of the dock that intruded on adjacent property and waiver of any 10-foot side setback.

    d.    Demolition of the protruding dock from adjacent property and a waiver allowing a 3-foot side setback. (See plans submitted March through May 2019. (**Exhibit 14c**).

54.    Plaintiff's engineers presented evidence showing that at least ten (10) other docks on the same body of water were in "violation" of the 10-foot side setback, a situation that was similar on numerous other bodies of water within the City.

55.    After submitting five (5) sets of plans, it became clear to the Plaintiff and her consultants that she was up against a force that for one reason or another wanted the dock removed. It became obvious to the engineering and architectural firms that the City was not even reviewing the plans, and when they did, they added requirements that had already been addressed and completed.

56.    It became obvious to the engineers that the City was intentionally discriminating against the Plaintiff and would deny her waiver to the 10-foot side

setback when it was obvious that numerous other docks in the City were in violation of the setback regulation. The engineer  pointed out to the City that Plaintiff's riparian/littoral rights were being taken away because of the discriminatory demands made upon Plaintiff.

57.    After 20 months of working with City staff and presenting five (5) engineering plans, it was obvious that the Plaintiff was being discriminated against, and the unconstitutional conditions placed upon Plaintiff made it futile to further proceed with the City. Because the City had not allowed Plaintiff to present any evidence to the Code Board and because twenty (20) months had passed since the Order in September assessing the fine, the engineer told the Plaintiff it was time to retain a lawyer because she was not going to get any relief from the City. It was obvious that any further effort to deal with the city would be  futile.

58.    Plaintiff, through a public records request, received a list of docks that have been issued permits for some maintenance or other type of construction on a new or existing dock. (**Composite Exhibit 15**).  The response did not comply with the Plaintiff's public records request because it did not provide the "entire file" of each application, if there was one. Comments made on the application that were provided do not indicate in any way that any particular applicant was required and subject to the same unconstitutional permitting and harassment that was demanded of the Plaintiff.

59.     Plaintiff recognized that through mistake, she added additional amenities to her dock that were not on the original dock. In a normal permitting violation for not acquiring a permit, an applicant would be charged a double or triple fee for an after the fact permit.

WHEREFORE, Plaintiff prays this Court:

a)      Find that the City discriminated against the Plaintiff during the permitting process;

b)      Find the acts and conduct directed toward the Plaintiff during the permitting process amounted to unconstitutional discrimination and damages to the Plaintiff, including mental anguish;

c)      Find that Plaintiff's littoral rights are superior to the City's 10-foot side setback;

d)      Require the City to grant to Plaintiff a waiver of the 10-foot side setback line and grant Plaintiff an after the fact permit, notwithstanding her littoral rights;

e)      Award the Plaintiff reasonable attorney fees and costs incurred in bringing this action;

f)      Award the Plaintiff damages incurred as a result of the discrimination and for mental anguish as appropriate; and

g)      Such other and further relief as this court deems just and proper.

## COUNT  III
## DUE PROCESS

60.     Paragraphs 1 through 38, 43 through 44, and 50 through 59 are realleged as if fully set forth herein and are incorporated by reference.

61.     It is notable that at the September 13, 2018 Code Board meeting in which the Order was entered directing the Plaintiff to correct the violations within ninety (90) days or face a $100.00 per day fine, that there was never a mention that the Plaintiff had received a permit for the dock in 1989. The record of the September 13, 2018 meeting is void of any reference to the fact that the Plaintiff was working with the City and had presented engineering plans which Plaintiff thought would resolve the issues. The City presented its side of the code complaint, but no reference was made as to the efforts by the Plaintiff to comply.  (**See Composite Exhibit 8**).

62.     On April 11, 2019, eight (8) months after the September Code Board assessed a fine, the Code Board called a hearing to impose a fine against the Plaintiff. (**Composite Exhibit 16**). At the hearing, Plaintiff's attorney was a no show again, and Mitchell Edwards, Plaintiff's son, asked for a continuance or to be allowed to speak. When Mitchell started to speak about the 1989 permit, he was interrupted by Tom Dalton ("Dalton"), the same person who made the statement to James Randy Myers that the dock would be torn down. Dalton testified the 1989 permit "has already been litigated" and the permit for the boat dock "did not receive a final inspection". Those representations were incorrect, and Mitchell was cut off.

(**Exhibit 17**).

63.     Mitchell was cut off and prohibited from presenting evidence regarding the 1989 permit and more importantly prohibited from disclosing to the Code Board that since the September 13, 2018 Code Board Order, the Plaintiff had submitted engineering plans to the City on September 28, 2018, March 23, 2019, and again on April 6, 2019. Whether or not the Plaintiff had an attorney who failed to appear and represent her is not an issue because Plaintiff's son attempted to speak and was denied.

64.     The fact that Mitchell Edwards was cut off from speaking was not lost on the Clerk of the Code Board who emailed Dalton that he did cut Mitchell off from speaking. (**Exhibit 18**).

65.     Plaintiff was denied due process rights in violation of her 5th and 14th Amendment rights and prevented from presenting evidence of her continued efforts to satisfy the unconstitutional conditions being imposed upon her by the City.

66.     More disturbing, the Code Board fine was running for the entire period that Plaintiff was trying to work with the City and provide the information and engineering requested.

67.     Plaintiff was properly notified of the hearing, but when denied the right to speak and present her explanation of what had occurred over the past year, Plaintiff's due process rights under the 5th and 14th Amendments were violated.

Plaintiff suffered damages for loss of ability to use her investment property and/or mortgage her home to sustain her daily living and pay for litigation costs, as well as for the mental anguish she suffered.

WHEREFORE, Plaintiff prays this Court to:

a)   Find that Plaintiff was denied her right to speak and present evidence at the Code Board hearing;

b)   Find that Plaintiff's due process rights were violated;

c)   Find Plaintiff entitled to damages for violation of her due process rights, including daily overhead, living expenses, and mental anguish, and assess the same as appropriate;

d)   Award Plaintiff her reasonable attorney fees and costs incurred in bringing this action; and

e)   Award Plaintiff such other and further relief as this Court deems just and proper.

## COUNT IV
## FIFTH AMENDMENT TAKING

68.    Plaintiff brings this cause of action against the City for the taking of her property without just compensation and for cause would state:

69.    Paragraphs 1 through 38, 43 through 44, and 61 through 67 are realleged as if fully set forth herein and are incorporated by reference.

70.    The City was aware that the Plaintiff had taken legal action against the Myers to affirm that her prescriptive easement over the property under which the dock is located, yet took no recognition of Plaintiff's prescriptive easement or her littoral rights, both of which are property under the Fifth Amendment. Plaintiff constructed the dock in 1989 so that it allowed her to access her water rights. The dock was placed in the tax roll in 1990. In 2010, Plaintiff's prescriptive easement automatically ripened after twenty (20) years as a result of use and occupation by Plaintiff.

71.    Although Plaintiff's engineers submitted five (5) different sets of engineering plans in an effort to acquire a permit to keep, rebuild and relocate the dock, such efforts were denied by the continued requirement that the Plaintiff accept the unconstitutional conditions that Plaintiff dismantle and remove or relocate the dock. (See Exhibits 14a, 14b, and 14c**).**

72.    Plaintiff's dock has remained in the same location for thirty (30) years and Plaintiff has acquired a prescriptive easement over the subject property under the dock and is totally within the law to place the dock as it is over her property line.

73.    Plaintiff's property is situated so that a major portion of west side property line extends in or to the lake so as to impose a 10-foot side setback would prohibit the use of half of the west side property and destroy the Plaintiff's littoral rights as well as her prescriptive easements to use her shoreline. (**See Exhibit 14c).**

74.     The purpose and results of the City imposing setback lines on Plaintiff's property is to allow the public and the Myers to use the area after the dock is removed. The City addressed the navigable waterway and the effect the dock would have on same. The requirement that the Plaintiff's dock meets certain elevations, appropriate markings, and lighting, so as not to impede or disturb navigation or create safety hazards on the waterway are for a public purpose. As a general statement, the requirement for and enforcement of the setback lines are for a public benefit and are more commonly referred to by the government itself, for the health, safety, and welfare of the public.

75.     Plaintiff's intrusion into Lot 251 occurred in 1989 and Plaintiff's prescriptive rights to use that portion of the property on which the dock extended automatically ripened in 2009.

76.     In addition to Plaintiff's prescriptive easement rights, Plaintiff has common law rights to enter into Lot 251 to access navigable water. That common law right is now a statutory right pursuant to Fla. Statute 253.141. The City's ordinance requiring a 10-foot side setback is subordinate to the Plaintiff's littoral rights.

77.     Plaintiff's riparian and littoral rights consist not only of the right to use the water shared by the public but includes the vested rights; (1) the rights of access to the water, including the rights to contact with water remain intact; (2) the right to

use the water for navigational purposes; (3) the right to an unobstructed view of the water; (4) the right to receive accretions and relictions to the property. As such, riparian and littoral rights constitute "property" in the constitutional sense.

78.    The City's ordinance imposing a 10-foot side yard setback is unconstitutional on its face because it discriminates against waterfront property owners, giving no acknowledgment or respect for a waterfront owners riparian or littoral rights.

79.    The taking temporarily or permanently prohibiting the use of littoral rights on top of taking the prescriptive easement has and will cause significant damage to the  property. If the unconstitutional conditions are allowed to remain, there will be no use of Plaintiff's easement and littoral rights and would limit the ability to boat and fish and otherwise fully enjoy her property.

80.    The order requiring the Plaintiff to tear down the structure that had been in place for thirty (30) years simply because Plaintiff failed to obtain a permit is an unconstitutional condition resulting in both the taking of Plaintiff's littoral and easement rights upon which the boat dock is placed.

81.    The Permit condition that Plaintiff dismantle and remove or relocate the dock is an unconstitutional condition on its face because the City knew or should have known that Plaintiff's easement and littoral rights were superior to the City's building code. Plaintiff's representatives advised the City that the Property

Appraiser's office could confirm a final permit was issued, thus setting up Plaintiff's littoral rights

82.    As a result of the April 11, 2019 Code Board Order, Plaintiff's property has been encumbered with a $20,000.00 lien against her homestead and an investment property she owns in Casselberry, Florida.  The lien amount continues to increase, notwithstanding that Plaintiff has continued to submit engineering plans to the City which were summarily deemed unacceptable and further review required. Plaintiff has no control over the City's review process and delay, intentional or otherwise, which works to the City's advantage by increasing the lien amount.

83.    The lien has caused a loss of the sale of Plaintiff's retirement investment property in this hot real estate market and now Realtors will not entertain a listing of the property because it is not sellable. Most damning is the fact that Plaintiff cannot mortgage her property to acquire funds for everyday expenses or to continue the permitting process or the legal cost of litigation.

84.    After submitting many plans, it became clear to the Plaintiff and her consultants that it was futile to pursue further permitting efforts with the City because the City was not even reviewing the plans submitted.

85.    Plaintiff's civil rights claims are not subject to exhaustion of remedies through the administrative process and as previously noted, the futility of further dealing with the City through its administrative process was futile.

86.    Upon the entry of the Code Board Order on April 11, 2019, Plaintiff could have, but not required, taken appellate action in the Circuit Court at that time because her actions were ripe, but in doing so Plaintiff  would jeopardize her civil rights actions.

87.    By imposing the unconstitutional conditions on Plaintiff's property, Plaintiff's property has been taken temporarily, at the very least, and permanently, if the Court does not find the imposition of the 10-foot side yard setback unconstitutional as applied to Plaintiff's property.

WHEREFORE, Plaintiff prays this Court to:

a)    Find that Plaintiff was denied her right to speak and present evidence at the Code Board hearing;

b)    Find that Plaintiff's  due process rights were violated;

c)    Find Plaintiff entitled to damages for violation of her due process rights including daily overhead, living expenses, and mental anguish, and assess the same as appropriate;

d)    Award Plaintiff her reasonable attorney fees and costs incurred in bringing this action; and

e)    Award Plaintiff such other and further relief as this Court deems just and proper.

## COUNT  V
## DECLARATORY ACTION TO DETERMINE CONSTITUTIONALITY OF CITY ORDINANCE REQUIRING SIDE YARD SETBACK TO WATERFRONT PROPERTY OWNERS VIOLATES PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS

88.    Paragraphs 1 through 38, 43 through 53, and 71 through 87 are realleged as if fully set forth herein and are incorporated by reference.

89.    This is a declaratory action directed to an ordinance of the City of Altamonte Springs which directly affects the Plaintiff and other waterfront property owners in the City.

90.    There is no other remedy available to waterfront property owners unless and until being subjected to a code violation based on an unconstitutional alleged side yard setback violation and being damaged to challenge the unconstitutional condition.

91.    The City has enacted legislation to govern land-use development and residential construction and in doing so the City's ordinance regarding side yard setbacks is unconstitutional as applied to waterfront property owners.

92.    A waterfront property owner may not be aware or understand their water rights and likewise City staff may not be trained or versed in water rights.  The City staff blindly applies the 10-foot side yard setback to all residential development.

93.    The city applied the 10-foot side yard setback to Plaintiff's application to permit repairs to her dock and the application of this ordinance is arbitrary and is

in violation of Plaintiff's substantive due process rights.

94.    Plaintiff seeks a declaration that the City ordinance requiring 10-foot side yard setbacks is unconstitutional as it is applied to Plaintiff and like situated waterfront property owners.

WHEREFORE, Plaintiff prays this Court to:

a)    Declare that a side yard setback as applied to a waterfront property owner, of which Plaintiff is one, takes property rights to wit littoral and/or riparian rights;

b)    Award plaintiff her attorney fees and costs; and

c)    Award Plaintiff such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

A trial by jury is hereby demanded.

Respectfully Submitted,

/S Michael D. Jones
Michael D. Jones, Esquire
Florida Bar No. 137608
MICHAEL DOUGLAS JONES, PA
P.O. Box 196336
Winter Springs, FL 32719
Telephone: 407/359-9914
Email: mike@mdj1944.com and
office.mdj12444@gmail.com
Attorney for Plaintiff

**VERIFICATION**

5/3/22
Date

_Carol G. Edwards_
Carol G. Edwards

STATE OF FLORIDA
COUNTY OF SEMINOLE

     BEFORE ME, the undersigned authority, appeared Carol G. Edwards by means of ☑ physical presence or ☐ online notarization, who being by me first duly sworn, swears and affirms that she has read and executed the foregoing Verified Second Amended Complaint and affirmatively states that the contents thereof are true and correct.

     SWORN TO AND SUBSCRIBED before me this 3rd day of May, 2022.

_Stephanie Casco_
Notary Public, State of Florida
My Commission Expires:

STEPHANIE CASCO
MY COMMISSION # GG 932279
EXPIRES: March 15, 2024
Bonded Thru Notary Public Underwriters

____ ✓ personally known
____ produced identification:

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on May 3, 2022, I electronically filed the foregoing Verified Second Amended Complaint by using the CM/ECF system, which has caused a Notice of Electronic Filing to be sent to S. Renee Stephens Lundy, Esq. (RLundy@drml-law.com;    BrittanK@drml-law.com;    Denise.Covert@drml-law.com.

                        s/ Michael D. Jones
                        Michael D. Jones, Esquire
                        Florida Bar Number: 137608
                        MICHAEL DOUGLAS JONES, PA