## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CAROL G. EDWARDS,

              Plaintiff,

    v.

CITY OF ALTAMONTE SPRINGS,
FLORIDA,

              Defendant,

Civil Action No.
6:22-cv-689-PGB-DCI

## PLAINTIFF'S OPPOSED MOTION TO EXTEND DEADLINE
## TO AMEND AND FOR LEAVE TO AMEND COMPLAINT

Pursuant to Federal Rule of Civil Procedure 16(b) and 15(a)(2), and this Court's Order permitting Plaintiff to "file a renewed motion for leave to amend the complaint that includes a request to extend the CMSO's deadline for amending the pleadings[,]" [Dkt. No. 57], Plaintiff Carol Edwards hereby submits this motion respectfully asking the Court to extend the two case scheduling deadlines that lapsed prior to the implementation of the three-year stay and for leave to amend her Complaint.

## INTRODUCTION

This litigation was delayed by a nearly three-year-long stay pending the outcome of related state court litigation, which clarified certain facts and legal conclusions that bear on Mrs. Edwards' claims in this matter. Shortly prior to the beginning of the stay, two case scheduling deadlines passed—the deadline

1

to amend the pleadings and the deadline for Mrs. Edwards' expert disclosure. Regardless of the outcome of this motion, all other deadlines that followed the implementation of the stay will need to be reset. Accordingly, Mrs. Edwards now requests an extension of just those two deadlines, which will, most critically, enable her to seek leave to amend her complaint. Mrs. Edwards further requests leave to amend the complaint by adding a claim asserting the Seventh Amendment's right to a jury trial and a claim under the Eighth Amendment's Excessive Fines Clause. Mrs. Edwards' proposed Fourth Amended Complaint is attached as Exhibit 1.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Mrs. Edwards filed her initial Verified Complaint on June 12, 2020, in Seminole County Circuit Court. On April 8, 2021, Defendant removed to this Court. On April 8, 2022, Mrs. Edwards filed a Verified Amended Complaint. [Dkt. No. 1-1]. On April 14, 2022, Defendants moved to dismiss the Verified Amended Complaint. [Dkt. No. 5]. In response, on May 3, 2022, Mrs. Edwards filed a Verified Second Amended Complaint. [Dkt. No. 12]. On May 17, 2022, Defendants then filed a Motion to Dismiss the Verified Second Amended Complaint. [Dkt. No. 14]. On May 18, 2022, the parties submitted a Uniform Case Management Report with their proposed deadlines. [Dkt. No. 15]. The Court on May 19, 2022, entered its Case Management and Scheduling Order ("CMSO"). [Dkt. No. 16]. The first deadline—"Motion to Add Parties or to

Amend Pleadings"—was set for July 1, 2022, and the second deadline—
"Disclosure of Expert Reports" for the Plaintiff—for December 1, 2022. *Id.* On
July 7, 2022, this Court granted in part and denied in part Defendant's Motion
to Dismiss the Verified Second Amended Complaint and granted Mrs. Edwards
leave to amend. [Dkt. No. 19]. As such, on July 21, 2022, Mrs. Edwards filed
her Verified Third Amended Complaint. [Dkt. No. 20]. The Verified Third
Amended Complaint included Count I – Equal Protection Discrimination,
Count II – Fifth Amendment Takings, and Count III – Eighth Amendment
Excessive Fines. *Id.* Defendant again brought a Motion to Dismiss the Verified
Third Amended Complaint on August 4, 2022. [Dkt. No. 21]. On August 15,
2022, Plaintiff filed both a Notice of Voluntary Dismissal of Count III Without
Prejudice [Dkt. No. 22] and a Response to Defendant's Motion to Dismiss the
Third Amended Complaint [Dkt. No. 23].

Before a hearing was held on the Motion to Dismiss the Verified Third
Amended Complaint, Mrs. Edwards filed a Motion to Stay Litigation on
December 5, 2022, pending the outcome of a state court case she filed against
her neighbors regarding the dock at issue in this case, which had the potential
to be dispositive of this matter. [Dkt. No. 26]. This Court granted the Motion
to Stay on December 8, 2022, and required periodic updates from the parties.
[Dkt. No. 30].

On February 17, 2025, in a status report, Mrs. Edwards informed this Court that Final Judgment was entered on February 5, 2025, in the state court matter in her favor, but that the Defendants in that matter indicated that they would be appealing. [Dkt. No. 42]. Then on May 16, 2025, in a status report, Mrs. Edwards informed this Court that a hearing in the state court matter was scheduled for June 3, 2025, which left open the time to appeal. [Dkt. No. 43]. Then on August 4, 2025, Plaintiff filed a Motion to Extend the Stay of Litigation for an additional sixty days, until October 15, 2025. [Dkt. No. 44]. Mrs. Edwards' long-time counsel, Michael D. Jones, explained that the need for the additional stay of litigation was because he was seeking replacement counsel to take over this case as he is facing ongoing and severe medical issues. *Id*. On August 7, 2025, this Court granted the Motion to Extend the Stay and indicated that the stay of litigation would be automatically lifted on October 15, 2025. [Dkt. No. 45].

Due to Mr. Jones' ongoing and debilitating medical issues, and after more than fifty years of legal practice, he is winding down his practice, finding replacement counsel for his cases, and moving towards retirement. Mr. Jones sought the services of Pacific Legal Foundation ("PLF") for Mrs. Edwards because of the important constitutional issues at stake in this case and the fact that PLF provides pro bono legal services to its clients. As a widow in her eighties with very limited resources and facing ruinous municipal fines, PLF's

4

involvement is very likely Mrs. Edwards' only hope for vindication of her constitutional rights. Mr. Jones will remain on this case in a limited, Of Counsel role, until this case is decided at the District Court, he fully retires, or health issues impel his withdrawal, whichever occurs sooner.

As the Court is aware, this case has a long and complicated history; it has been ongoing for about nine years and has included a few different legal challenges before different decision makers. New counsel only recently received the full records of this and the state court matter. As such, it has taken substantial time for new counsel to get up to speed, strategize the appropriate next steps for litigation, and develop a Fourth Amended Complaint that incorporates the new and relevant facts and legal conclusions arising from the intervening state court matter.

## ARGUMENT

### I. Good Cause Exists Under Rule 16(B) to Extend the Deadline for Amendment

Federal Rule of Civil Procedure 16(b) provides that a case management and scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In the Eleventh Circuit, a motion to amend filed after the scheduling order's deadline, must demonstrate "good cause" under Rule 16(b)(4) before a Rule 15(a) analysis is undertaken. *See Sosa v.*

*Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (additional citations omitted).

The 'good cause' analysis typically hinges on the movant's diligence. "[T]his good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Id.* at 1419 (quotation and citation omitted); Fed. R. Civ. P. 16 advisory committee's note. Nevertheless, as explained in *Auto-Owners Insurance Co. v. Ace Electrical Service, Inc.*, "[t]he Eleventh Circuit's case law . . . has never foreclosed the possibility that good cause can be demonstrated by facts external to the parties' conduct." Thus, "even when a party . . . has failed to demonstrate diligence under *Sosa*, the term 'good cause' is broad enough to permit the Court to grant the request for other reasons." 648 F. Supp. 2d 1371, 1377–78 (M.D. Fla. 2009).

*Home Legend, LLC v. Mannington Mills, Inc.*, is instructive. No. 4:12-CV-0237-HLM, 2014 WL 12489761, at *1 (N.D. Ga. July 2, 2014). There, the court granted a motion to amend the scheduling order in part because of a previous lengthy stay. *Id.* at *2 ("Under the circumstances presented by this case—in particular, the lengthy stays imposed . . . the Court finds that [the movant] has shown good cause to amend the scheduling order."). While other factors contributed to the court's decision, *Home Legend* illustrates that diligence is not the only—and not even the most important—factor that may be considered in a 16(b) good cause analysis. *See Auto-Owners*, 648 F. Supp. 2d

at 1377–78 (permitting a third-party complaint well after the scheduling order deadline despite the movant's clear lack of diligence).

Here, it was not a lack of diligence that prevented Mrs. Edwards from meeting the deadline to amend, but rather the lengthy stay in litigation from December 8, 2022 [Dkt No. 30] to October 23, 2025 [Dkt. No. 52], a stay to which the Defendant consented [Dkt. No. 26] and which the Court approved. Critically, the purpose of the stay was to allow for the resolution of state court litigation that, the parties agreed, would bear on the claims raised in this lawsuit. Accordingly, the stay reflects a tacit understanding amongst the parties and the Court that belated amendment may be necessary to ensure that this action incorporates the full, relevant factual record and all appropriate legal claims.

To the extent that Mrs. Edwards' diligence is relevant here, it has been demonstrated in her immediate actions upon the anticipated lifting of the stay—namely the appearance of her new counsel on October 15, 2025 [Dkt. Nos. 46–48], and the filing of her initial Motion for Leave to Amend on October 16, 2025 [Dkt. No. 50]. Notably, in its response to Mrs. Edwards' first Motion for Leave to Amend, Defendant did not identify any lack of diligence on Mrs. Edwards' part. Defendant objected only to her failure to move for an extension of the deadline to amend and her desire to pursue a new litigation strategy in light of her success in the state court action. The present motion

resolves Mrs. Edwards' failure to move for an extension of the amendment deadline. And, as explained above, Mrs. Edwards' desire to pursue a new litigation strategy to account for her success in the related litigation is an entirely reasonable and predictable response upon the conclusion of a stay that was imposed for that very reason. The Court should not accept any effort to recast that as a lack of diligence.

As a final note, extending the deadline to amend the complaint will not prejudice Defendant because it does not impact other deadlines set in this matter. All remaining deadlines have already been superseded by the stay. *Cf. Shaw's Tree Serv. v. Shaw's Servs., LLC*, 2022 WL 19842686, at *7–8 (M.D. Fla. Aug 26, 2022) (noting that allowing plaintiff to amend the complaint would not prejudice the defendant when the court was already considering extension of other discovery deadlines). Of the nine pre-trial deadlines set by the CMSO, only the first two deadlines passed before the stay was ordered: the deadline for a "Motion to Add Parties or to Amend Pleadings" on July 1, 2022, and the deadline for Mrs. Edwards' "Disclosure of Expert Reports" on December 1, 2022. [Dkt. No. 16]. Prior to the stay, the parties had not exchanged discovery requests or conducted depositions, likely because the factual issues in contention at the time were anticipated to be resolved in the state case. So, while this case has been stayed for several years, it is still in an early stage of litigation. As such, Defendant will not be prejudiced by moving only those first

two deadlines in the CMSO. All remaining deadlines followed in implementation of the stay will require extension. Thus, even if the Court rejects Plaintiff's request to extend the deadline to amend the complaint and for expert disclosure, the parties will need to confer and reset all remaining deadlines in this matter.

## II.    Justice Requires Leave to Amend Under Rule 15(a)(2)

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires." When the "underlying facts or circumstances . . . may be a proper subject of relief," a movant "ought to be afforded an opportunity to test [her] claims on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Additionally,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave should be [granted].

*Id.* Even when a party delays in filing a motion to amend, "[t]he lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint." *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001) (citing *Floyd v. E. Airlines, Inc.*, 872 F.2d 1462, 1490 (11th Cir. 1989). Here, there have been significant factual and legal changes since the

9

preceding versions of the complaint that should enable Plaintiff the opportunity to pursue relief through an amended complaint. This motion is brought in good faith, immediately upon the conclusion of the stay, and not for the purpose of causing delay or prejudice to Defendant.

This motion is brought in good faith because Mrs. Edwards has obtained new counsel who is devising different strategies for this litigation than were pursued in previous iterations of the complaint. The purpose for seeking further amendment is not simply to cure deficiencies by amendments previously allowed, but to ensure that the specific claims asserted are factually and legally sound in light of changed circumstances. Indeed, accounting for the outcome of the state court litigation was the very reason for the stay in the first place. This request for leave to amend is wholly consistent with that expectation.

Since the Motion to Stay Litigation was granted [Dkt. No. 30], two significant events occurred that warrant amending the complaint.

First, a final judgment in Plaintiff's favor was entered in the aforementioned state court matter. *See* Exhibit 2. This final judgment established that the Plaintiff has riparian rights and a prescriptive easement over the dock at issue in this case. This significant legal determination and the facts underlying it should be fully explained in an amended complaint, as they are highly relevant to Mrs. Edwards' constitutional claims against Defendant.

10

Second, in 2024, the United States Supreme Court clarified that the constitutional right to a jury trial under the Seventh Amendment applies to an administrative proceeding when a civil penalty is sought or imposed and the claims are akin to common law claims that were historically entitled to a jury. *SEC v. Jarkesy*, 603 U.S. 109 (2024). This landmark decision is a significant change for legal proceedings before administrative adjudicators. Plaintiff should be granted leave to amend the complaint in order to, among other things, raise a Seventh Amendment claim that was previously unavailable.

This motion is not for the purpose of undue delay. Mrs. Edwards' new counsel has acted diligently in entering their appearances and submitting this motion immediately upon the conclusion of the stay in light of the three years that this litigation has been stayed. Accordingly, another brief delay will not cause undue hardship to the Defendant. Moreover, a clarified and streamlined complaint will only serve to improve litigation going forward and reduce the potential for future delays.

Finally, the difficult personal circumstances of Mrs. Edwards' prior attorney, requiring the involvement of new representation, counsels strongly in favor of granting Mrs. Edwards leave to amend, as she would otherwise have no choice but to abandon her efforts to enforce her constitutional rights. Denial of leave would not serve the interests of justice here.

Therefore, Plaintiff respectfully requests that this Court grant this
Motion for Leave to Amend the Complaint in order to provide: (1) replacement
counsel a full and fair opportunity to review the case history and documents;
(2) this Court a more comprehensive factual background, including the State
court case that decided important legal and factual issues; (3) the opportunity
for Mrs. Edwards to correct any pleading deficiencies and narrow her
complaint to appropriate Constitutional claims; and (4) and raise a
Constitutional claim that was previously unavailable.

## A. A Seventh Amendment Claim Is Not Futile

Under Rule 15(a)(2), leave to amend should be freely given "when justice
so requires." Fed. R. Civ. P. 15(a)(2). As discussed *supra*, absent an apparent
or declared reason, such as futility, among other things, the motion for leave
to amend should be granted. *See Foman*, 371 U.S. at 182. Futility is judged by
whether the proposed amendment would survive a motion to dismiss. *See Hall
v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). Plaintiff's
proposed Seventh Amendment claim is not futile.

"The Rule's 'purpose is to provide maximum opportunity for each claim
to be decided on its merits rather than on procedural technicalities.'" *BLOM
Bank SAL v. Honickman*, 605 U.S. 204, 213 (2025) (quoting 6 C. Wright, A.
Miller, & M. Kane, Federal Practice and Procedure § 1471. p. 587 (3d ed. 2010)
(Wright & Miller)). It reflects the "principle that the purpose of pleading is to

12

facilitate a proper decision on the merits." *Foman*, 371 U.S. at 182. "If the
underlying facts or circumstances relied on by a plaintiff may be a proper
subject of relief, he ought to be afforded an opportunity to test his claims on
the merits." *Id*. Which is why denying leave to amend a potentially viable claim
requires a "justifying reason," such as "undue delay, bad faith[,] or dilatory
motive on the part of the movant." *Id*. Absent such a justification, denying
leave to amend "is not an exercise of discretion; it is merely an abuse of that
discretion and inconsistent with the spirit of the Federal Rules." *Id*.

Defendant may argue that a Seventh Amendment claim is futile because
the Seventh Amendment has not been incorporated by the U.S. Supreme Court
against the States through the Fourteenth Amendment. But this argument of
futility ignores the standard for determining whether an amendment is futile.
A proposed amendment is futile when the proposed change would not allow the
complaint as amended to survive a Rule 12(b)(6) motion to dismiss. *Burger
King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). "To survive a
motion to dismiss, a complaint must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)). If the proposed amendment "is frivolous or advances a claim or defense
that is legally insufficient on its face, the court may deny leave to amend. If a
proposed amendment is not clearly futile, then denial of leave to amend is

improper." 6 Wright, Miller & Kane, *Federal Practice & Procedure* § 1487 at 637–42 (2d ed. 1990). In other words, the doctrine of futility begins where the plausibility standard ends. But the futility analysis "does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense; this does require, however, that the newly asserted defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D. N.J. 1990)

*In re NuMed Home Health Care, Inc.*, is an instructive case because the court granted the motion for leave amend despite defendant's futility argument. 326 B.R. 859 (Bankr. M.D. Fla. 2005). "Futility of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue." *Id.* at 864 (quotation and citation omitted). "The newly asserted claim must thus appear sufficiently grounded in law or fact as not to be deemed a frivolous pursuit." *Id.* at 865 (quotation and citation omitted). "The Court should deny an amendment as futile only when the proposed amendment is clearly insufficient or frivolous on its face." *Id.* (quotation and citation omitted). The court reasoned that because the proposed claim was grounded in law, it did "not appear 'beyond a doubt that the [Plaintiff] can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *United States v. Baxter Int'l, Inc.*, 345 F.3d

866, 880 (11th Cir. 2003)) (court determined that it cannot conclude that the proposed amendment would not withstand a motion to dismiss).

A claim to challenge Supreme Court precedent is a plausible claim. If a claim that challenges Supreme Court precedent is deemed to be legally insufficient, then no one could ever challenge Supreme Court decisions. Although federal courts are obligated to apply Supreme Court precedent, application of precedent does not automatically render a claim challenging that precedent legally insufficient.

The *Jarkesy* decision applying the Seventh Amendment to administrative proceedings opens the possibility to challenge *Minneapolis & St. Louis Railroad Co. v. Bombolis*, 241 U.S. 211 (1916). Importantly, the *Bombolis* case was decided before the Supreme Court began its selective incorporation process. Furthermore, the Supreme Court's interest in revisiting the *Bombolis* decision was recently expressed in the recent denial of certiorari in *Thomas v. Humboldt County*, No. 24-1180, 2025 WL 2906470 (Mem) (U.S. Oct. 14, 2025). Justice Gorsuch's statement respecting denial acknowledged that "*Bombolis* is something of a relic." *Id.* at *1. (referring to *Bombolis*, 241 U.S. at 211). The century-old *Bombolis* Court "dismissed as 'strange' the notion that the Seventh Amendment—or, for that matter, *any* of the Bill of Rights— might be enforceable against the States." *Id.* (quoting *Bombolis*, 241 U.S. at 217–18). A century ago, the idea of incorporating the Bill of Rights against the

15

States was 'strange', but in the century since, that decision the Supreme Court has "'shed any reluctance' about the Fourteenth Amendment 'incorporate[s]' against the States many of the liberties enshrined in the Bill of Rights." *Id.* (quoting *McDonald v. Chicago*, 561 U.S. 742, 764 (2010)). Gorsuch went on to explain that "it is hard to imagine how the Seventh Amendment might not be among those rights the Fourteenth Amendment secures against the States." *Id.* at *2. "[T]hose who founded our Nation considered the right by jury a fundamental part of their birthright." *Id.* (citing *Jarkesy*, 603 U.S. at 121). Gorsuch criticized *Bombolis*, "[t]hat *Bombolis* lingers on the books not only leaves our law misshapen, it subjects ordinary Americans to a two-tiered system of justice. . . . thanks to *Bombolis*, state and local agencies pursuing similar charges and similar relief sometimes claim that they are free to dispense with the hassle of proving their case to a jury." *Id.* "No less than at the founding, civil juries today play a critical role in governmental overreach, holding public officials accountable, and ensuring a fair hearing for those who come before our courts." *Id.* Gorsuch emphasized that "*Bombolis* may survive today, but this Court should confront its Seventh Amendment holding soon." *Id.*

In fact, earlier this year a New York state court held that the Seventh Amendment is incorporated against the States through the Fourteenth Amendment. *Ball v. New York State Dept. of Health*, 233 N.Y.S.3d 893, 898–

16

99 (N.Y. Sup. Ct. Apr. 14, 2025). The *Ball* court went through the U.S. Supreme Court incorporation analysis and determined that the Seventh Amendment is deeply rooted in this Nation's history and tradition. *Id.* As such, the Seventh Amendment is applicable to the States through the Fourteenth Amendment. *Id.* at 912.

Therefore, a Seventh Amendment claim is not frivolous and it does not appear beyond a doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief.

## B. An Eighth Amendment Claim Is Appropriate

The Eighth Amendment claim is likewise not futile. The Eighth Amendment claim was raised in Plaintiff's Verified Third Amended Complaint. [Dkt. No. 20]. The Third Amended Complaint was filed after this Court granted in part and denied in part Defendant's motion to dismiss the Second Amended Complaint. [Dkt. No. 19]. This Court granted Plaintiff limited leave to "file an Amended Complaint following the directives of this [Court's] Order. . . ." *Id.* The Order came shortly after the original CMSO deadline to amend the complaint. As such, the limited leave to amend the complaint was constrained to addressing deficiencies as identified by the Court in the Verified Second Amended Complaint. It did not provide Plaintiff blanket leave to amend. As such, the Plaintiff voluntarily dismissed the Eighth Amendment claim, without prejudice, simply because of an improper

procedure. [Dkt. No. 22]. The proper procedure is to seek leave to amend to add the Eighth Amendment claim, which is precisely what Plaintiff is doing now.

## III. Plaintiff's Motion Complies with Rule 7(b)

Rule 7(b)(1) requires that motions "state with particularity the grounds for seeking the order" and "state the relief sought." Fed. R. Civ. P. 7(b)(1)(B)–(C). Plaintiff's motion clearly identifies the grounds—namely, the need to add a Seventh and Eighth Amendment claim—and the relief sought—leave to amend. Courts have held that failure to attach a proposed complaint is not fatal where the motion otherwise provides sufficient notice. *See Foman*, 371 U.S. at 182.

The Plaintiff is not obligated to attach a proposed amended complaint with its motion for leave to amend. The "proper method to request leave to amend is through filing a motion, and such motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Burgess v. Religious Tech. Ctr., Inc.*, 600 Fed. App'x 657, 665 (11th Cir. 2015) (unpublished opinion) (citing *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999)). Here, Plaintiff has done both. Attached is the proposed Fourth Amended Complaint. *See* Ex. 1. And, as discussed *supra*, Plaintiff has also described the two claims.

## CONCLUSION

Plaintiff respectfully requests this court grant this motion to extend the CMSO deadlines for the motion for leave to amend the complaint and the Plaintiff's expert disclosure, and grant Plaintiff's leave to amend the complaint.

DATED: November 24, 2025.

Respectfully submitted,

/s/ Loren A. Seehase
Loren A. Seehase, Fla. Bar No. 1065765
*Lead Counsel*
Johanna B. Talcott, Fla. Bar No. 1008094
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, Florida 33410
Telephone: (561) 691-5000
lseehase@pacificlegal.org
jotalcott@pacificlegal.org

Adi Dynar, AZ Bar No. 031583*
Pacific Legal Foundation
3100 Clarendon Boulevard, Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
adynar@pacificlegal.org

*Counsel for Plaintiff*
**Pro hac vice*

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Plaintiff hereby certifies that a good faith attempt to resolve or narrow the issue(s) presented by this motion has been made pursuant to LR 3.01(G). Specifically, on November 20, 2025, the undersigned emailed Defendant's counsel regarding this request. On November 20, 2025, counsel for Defendant responded that this request is opposed.

/s/ Loren A. Seehase
Loren A. Seehase
Pacific Legal Foundation

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I served this document via

the Court's electronic filing system to the Defendant:

S. Renee Lundy
Jessica C. Conner
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel: 407-422-4310
Fax: 407-648-0233
RLundy@drml-law.com
Jessica.Conner@drml-law.com
*Attorneys for Defendant*

/s/ Loren A. Seehase
Loren A. Seehase
Pacific Legal Foundation