IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CAROL G. EDWARDS,                    CASE NO:  6:22-cv-689-PGB-DCI

     Plaintiff,

vs.

CITY OF ALTAMONTE SPRINGS, FLORIDA,

     Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS
## THE FOURTH AMENDED COMPLAINT

Defendant CITY OF ALTAMONTE SPRINGS (the "City") hereby files this

Motion to Dismiss the Fourth Amended Complaint [Doc. 63], as follows:

### ALLEGATIONS AND PROCEDURAL HISTORY

A. Second Amended Complaint

On May 3, 2022, Plaintiff Carol G. Edwards filed a Second Amended

Complaint. [Doc. 12]. Plaintiff's claims arose from proceedings before the City's

Code Enforcement Board (the "CEB") and City staff's denial of Plaintiff's permit

application for her dock. Plaintiff was cited by the code inspector for construction

of the dock without a permit. [*Id.* ¶14]. The City advised that no permit had been

issued for the construction of the initial dock, the dock did not meet the 10-foot

side yard setback, and therefore the repairs were undertaken illegally. [*Id.* ¶ 16].

Plaintiff requested a waiver of the setback requirement. [*Id.* ¶ 25]. City staff advised

that a waiver would have to go before the Board of Zoning Appeals (the "BZA"). [*Id.*]. Plaintiff did not appeal to the BZA believing said appeal to be "futile." [*Id.* ¶¶ 25, 84].

The CEB entered an order requiring Plaintiff to either remove the boat dock or obtain the requisite permits. [*Id.* ¶ 29]. Plaintiff did not appeal the CEB Order to the circuit court. [*Id.* ¶¶ 36-37]. An order imposing fines was entered for Plaintiff's noncompliance resulting in a lien against Plaintiff's property. [*Id.* ¶ 82]. Plaintiff did not appeal the second order to the circuit court. [*Id.* ¶ 36].

B. City's MTD The Second Amended Complaint

On May 17, 2022, the City filed its Motion to Dismiss the Second Amended Complaint with Prejudice. [Doc. 14]. The City argued that relief under Count I for state law "estoppel" would allow an impermissible collateral attack on administrative action. [*Id.* at 3]. The City argued that Plaintiffs who abandon their right to appeal code enforcement orders are prohibited from collaterally attacking those orders in separate original lawsuits. [*Id.*]. The City also argued that Plaintiff failed to state a Fifth Amendment Takings claim [*Id.* at 17-23].

C. July 7, 2022 Dismissal of the Second Amended Complaint

On July 7, 2022, this Court dismissed Counts I (Equitable Estoppel) and III (Procedural Due Process) with prejudice, and Counts II (Equal Protection), IV (Fifth Amendment Taking), and V (Substantive Due Process) without prejudice. [Doc. 19, p. 21 ("7/7/22 Dismissal Order")]. In dismissing Count I with prejudice, this Court found that "Defendants argue that any relief under Count I would be an

impermissible collateral attack on the administrative action of the City, and Plaintiff does not oppose the dismissal; thus, Count I is due to be dismissed with prejudice." [Doc. 19 at 6]. As to the Fifth Amendment Takings claim, this Court held that, "Even assuming Plaintiff has sufficiently alleged a taking, her claim still fails for the lack of a direct causal connection between the setback requirement and the suffered taking." [Doc. 19 at 16]. Further, the "CEB Orders did not directly cause the takings of Plaintiff's property" and the "only reason the April 2019 CEB Order was imposed was because Plaintiff refused to comply with the original September 2018 CEB Order." [*Id.* at 17]. "Thus, Plaintiff accrued the lien on her property—that has now effectively prevented her from selling or mortgaging her property—because of her 'unilateral decision' to continue to violate the CEB Order that was issued over three years ago without seeking a variance or any other available remedies." [*Id.*]. This Court dismissed the takings claim without prejudice. [*Id.* at 18].

### D. Third Amended Complaint

On July 21, 2022, Plaintiff filed a Third Amended Complaint attempting to replead her Equal Protection and takings claims (Count I was entitled "Discrimination" and Count II was for a "Taking"). [Doc. 20, pp. 14, 17]. Plaintiff also impermissibly added a brand new claim—Count III for a violation of the Eighth Amendment. [Doc. 20, p. 23]. Plaintiff again admitted that she requested a waiver of the 10-foot side yard setback requirement and was advised a waiver would have to go before the Board of Zoning Appeals ("BZA"). [*Id.* ¶¶ 16, 25].

Plaintiff admitted she did not appeal to the BZA. [*Id.* ¶ 25]. After a second hearing on April 11, 2019, the CEB imposed fines for Plaintiff's noncompliance with the first order. [*Id.* ¶¶ 51, 61]. Plaintiff admitted she did not appeal the CEB orders to the circuit court. [*Id.* ¶ 36]. Plaintiff filed this lawsuit instead.

### E. Motion to Dismiss the Third Amended Complaint

On August 4, 2022, the City filed its Motion to Dismiss the Third Amended Complaint with Prejudice. [Doc. 21]. The City argued that Count I for "Discrimination" still failed to state a claim under the Equal Protection Clause. [Doc. 21 at 3-5]. The City argued that Count II for a Fifth Amendment takings claim still failed to correct the deficiencies identified in the 7/7/22 Dismissal Order. [*Id.* at 5-6]. The City argued that Count III for a violation of the Eighth Amendment should be dismissed as procedurally improper and because it failed to state a claim as a matter of law. [*Id.* at pp. 6-8].

### F. Plaintiff's Response to Motion to Dismiss and Voluntary Dismissal of Count III for an Eighth Amendment Claim.

On August 15, 2022, the Plaintiff filed her Response to the Motion to Dismiss the Third Amended Complaint. [Doc. 23]. Plaintiff argued that Counts I and II were sufficiently pled, but she voluntarily dismissed Count III for violation of the Eighth Amendment. [Doc. 22].

### G. Plaintiff's Motion to Stay Pending State Court Litigation

Before this Court could rule on the City's Motion to Dismiss the Third Amended Complaint, Plaintiff filed on December 5, 2022, a Motion to Stay the

litigation pending the outcome of state court litigation against her neighbors. [Doc. 26]. A hearing was held on the Motion to Stay on December 8, 2022. [Doc. 27]. Plaintiff argued the state court litigation could moot the instant litigation against the City. [Doc. 26, p. 2]. Accordingly, this Court granted the stay on December 8, 2022 and did not rule on the pending Motion to Dismiss. [Doc. 30].

The City did not jointly request the stay, sign the motion for a stay, nor did it agree to the allegations therein. [*See* Doc. 26]. It merely advised Plaintiff that it would not object to the entry of a stay. [*Id.* at 2, ¶ 4]. Indeed, to the extent Plaintiff represented that the state court litigation could lead her to abandon her lawsuit against the City, the City was not opposed to that outcome. But the City never agreed to be bound by the state court litigation, nor could it be bound since it was a nonparty to that lawsuit. The City never agreed that the state court litigation could undermine the validity of the CEB Orders or otherwise provide a basis to collaterally attack those Orders which are final as between the City and the Plaintiff.

### H. Plaintiff's Opposed Motion to Extend Deadline to Amend and for Leave to Amend Complaint.

On November 24, 2025, Plaintiff filed her Opposed Motion to Extend Deadline to Amend and for Leave to Amend Complaint. [Doc. 58]. The City responded on December 8, 2025. [Doc. 59]. On December 15, 2025, this Court granted, in part, Plaintiff's motion for leave to file an amended complaint. [Doc. 62].

I. Plaintiff's Fourth Amended Complaint

On December 22, 2025, Plaintiff filed her Fourth Amended Complaint. [Doc. 63]. Count I adds back the Eighth Amendment claim which Plaintiff previously voluntarily dismissed. [Doc. 63 at 30-34; *see also* Doc. 22]. Count II reasserts the Fifth Amendment Takings claim. [Doc. 63 at 34-40]. Count III is entitled "Unconstitutional Conditions" and is brought pursuant to the "Fifth and Fourteenth Amendments." [Doc. 63 at 40-44].

Plaintiff alleges that in 2017, Hurricane Irma damaged her dock. [Doc. 63, ¶ 24]. Plaintiff made repairs and improvements to the dock. [*Id.* at ¶ 28]. Plaintiffs' neighbors, the Myers complained to the City that Plaintiff's dock intruded into their property. [*Id.* at ¶ 32]. As a result of the complaint, Plaintiff met with the City to discuss the required permits. [*Id.* at ¶ 34]. At this meeting, the City told Plaintiff that no permit had ever been issued for the original construction of the dock and that the dock did not meet the ten-foot side-yard setback as required by a City ordinance. [*Id.*]. As a result of the code violations, the City advised that the dock would have to be torn down. [*Id*]. On May 18, 2018, the City issued a Notice of Violation. [*Id.* at ¶ 37].

On September 13, 2018, the Code Enforcement Board held a hearing as to the Code violations. [*Id.* at ¶ 51]. Code Enforcement Officer Ed Conklin testified that Plaintiff was in violation of Land Development Code 3.3.1.6 for improving the property without obtaining the required permits and the work performed would require Building, Plumbing and Electrical permits. [*Id.* at ¶ 54]. The Board then

6

voted "to find the Respondent in violation of the cited codes; that the Respondent is to correct the violations on or before December 13, 2018; in the event the Respondent does not comply with this Order, a fine of $100 per day, will be imposed for each and every day the violation continues past the afore stated date and pay the City $250 in prosecution costs." [*Id.* at ¶ 60]. Compliance would include removing the boat dock and house structure completely and dispose of construction materials; and/or obtain Building, Electrical and Plumbing permits for the structures and pass all final inspections." [*Id.* at ¶ 64].

On December 14, 2018, Officer Conklin inspected the Property and determined that Plaintiff had not completed the actions required by the Board's September 13, 2018 Order. [*Id.* at ¶ 67]. On April 11, 2019, the Board entered an Order Imposing Fine against Plaintiff and noted that the "fine began to run as of December 13, 2018." [*Id.* at ¶¶ 73, 80]. Plaintiff does not allege that she appealed the CEB Orders to the circuit court for review. After City staff advised Plaintiff that issuance of a permit required Plaintiff's dock to comply with the 10-foot side yard setback, Plaintiff alleges she requested a waiver of that requirement and was denied. [*Id.* at ¶¶ 35-36]. Plaintiff does not allege that she appealed that denial to the Board of Zoning Appeals ("BZA").

After suing the City, Plaintiff alleges in the Fourth Amended Complaint she sued her neighbors, the Myers, on August 26, 2019 in a declaratory action in Florida state court seeking a declaration of a prescriptive easement and riparian rights over the boat dock. [Doc. 63 at ¶ 89]. On June 11, 2024, the magistrate in

the state court case issued a report and recommendation in Plaintiff's favor, finding that Carol had established a prescriptive easement over the portion of the adjacent property where the dock was located. [*Id.* at ¶ 93]. The magistrate also found that: (1) the dock was originally built in 1989 pursuant to a valid permit; (2) the repaired dock had not moved from its original location, and (3) the repaired dock did not increase the structure's size or result in a greater intrusion on the Myers' land. [*Id.* at ¶ 93]. On November 7, 2024, the circuit judge entered an order adopting the report and recommendation in full, and final judgment was entered on February 5, 2025. [*Id.* at ¶ 94].

<div align="center">MEMORANDUM OF LAW</div>

    A.    **All three Counts of the Fourth Amended Complaint must be dismissed with prejudice as an impermissible collateral attack on administrative action.**

After City staff denied Plaintiff's permit applications and requests for a waiver of the setback requirement, the Fourth Amended Complaint does not allege that she appealed any of these administrative actions to the Board of Zoning Appeals ("BZA") nor to the state circuit court pursuant to a petition for writ of certiorari. Likewise, after the Code Enforcement Orders were entered against her and fines imposed, Plaintiff does not allege that she appealed any of these administrative actions to the state circuit court. This is because she admitted in her Second and Third Amended Complaints that she abandoned these appellate remedies in favor of this lawsuit against the City. To be sure, the Second Amended Complaint alleged that Plaintiff requested a waiver of the setback requirement, but

<div align="center">8</div>

City staff advised that a waiver would have to go before the BZA. [Doc. 12, ¶ 25]. Plaintiff alleged that she did not appeal to the BZA believing said appeal to be "futile." [*Id.* ¶¶ 25, 84]. The Second Amended Complaint also alleged that Plaintiff did not appeal the CEB Orders to the circuit court. [*Id.* ¶¶ 36-37]. The Third Amended Complaint contained these exact same allegations regarding her abandonment of her appellate remedies. [Doc. 20, ¶¶ 25, 36].

Despite abandoning her right to challenge the validity of the City's decisions regarding her permit and the CEB orders by failing to timely appeal them, all three counts of the Fourth Amended Complaint continue to dispute the validity and lawfulness of the CEB orders and staff's permitting decisions. Count I alleges that the "allegations of encroachment and original 1980's construction without a permit and/or final inspection" have "since been judicially determined to be false allegations." [*Id.* at ¶ 115]. Count II continues to allege that the dock was "lawfully constructed" despite the CEB Orders conclusively finding otherwise. [*Id.* at ¶ 134]. Count II also continues to attack the validity of the City's denial of her applications for permits and variances. [*Id.* at ¶ 133]. And Count III continues to dispute the validity of the City's enforcement of its setback requirement. [*Id.* at ¶ 148].

Any relief, however, under Counts I, II and III that would be dependent upon this Court's determination that the City's decisions were invalid or unlawful would constitute an impermissible collateral attack on administrative action. Section 162.11, Florida Statutes, provides for a direct appeal of a code enforcement order to Florida's circuit courts. § 162.11, Fla. Stat. "An appeal shall be filed within 30

days of the execution of the order to be appealed." *Id.* Plaintiffs who abandon their right to appeal code enforcement orders and permitting decisions are prohibited from collaterally attacking those orders pursuant to original lawsuits seeking declarations invalidating the administrative actions, as follows:

> A party dissatisfied with an enforcement board special magistrate's order can either appeal that order or choose to be bound by it. However, it cannot initiate a collateral attack on that order by commencing a new action in circuit court....the circuit court...lacks procedural jurisdiction to otherwise entertain a collateral attack upon that order concerning matters that could have been properly raised on appeal.

*See Brevard County v. Obloy*, 301 So. 3d 1114, 1117 (Fla. 5th DCA 2020); *see also City of Miami v. Cortes*, 995 So. 2d 604, 606 (Fla. 3d DCA 2008) ("As to the enforcement order...neither he nor fellow property owner Cortes appealed that order...Thus, the enforcement order was outside the scope of the circuit court's review..."). Plaintiff admitted she never appealed the CEB orders believing she was not required to appeal. [Doc. 12, ¶ 36].

Counts I through III of the Fourth Amended Complaint also attempt a collateral attack on the decision of the City's permitting staff not to recognize Plaintiff's 1989 permit as valid. However, Plaintiff was required to exhaust her administrative remedies by appealing to the Board of Zoning Appeals ("BZA") and thereafter appealing to the circuit court on a petition for writ of certiorari. *See Key Haven Associated Enterprises, Inc. v. Bd. of Trustees of Internal Imp. Tr. Fund*, 427 So. 2d 153, 159 (Fla. 1982) (after a party exhausts its administrative remedies and receives "an adverse ruling, the only way it can challenge the *propriety* of the

permit denial, based on asserted error in the administrative decision-making process or on asserted constitutional infirmities in the administrative action, is on direct review of the agency action in the" requisite appellate court) (emphasis in original).

Thus, here, had Plaintiff appealed staff's decision to the BZA and received an adverse ruling, she could have sought judicial review in the circuit court pursuant to a petition for writ of certiorari. *See* Fla. R. App. P. 9.190(b)(3) ("Review of quasi-judicial decisions of any administrative body, agency, board, or commission not subject to the Administrative Procedure Act shall be commenced by filing a petition for certiorari...unless judicial review by appeal is provided by general law.").[1] "[A]dministrative remedies must be exhausted to assure that the responsible agency 'has had a full opportunity to reach a sensitive, mature, and considered decision upon a complete record appropriate to the issue." *Key Haven*, 427 So. 2d at 158.

Pursuit of administrative and judicial appellate remedies may be abandoned only "if the aggrieved party is willing to accept all actions by the executive branch as correct." *Id.* at 159. "Having completed review in the executive branch, if an aggrieved party does not wish to further contest the validity of the permit denial by

---

[1] *see also* Defendants' Motion for Judicial Notice, Doc. 8-1, p. 5 (Art. III, Div. 4, § 3.4.1.5, Land Development Code of the City of Altamonte Springs states: "Any person aggrieved by the decision of the board of zoning appeals may seek judicial review of such decisions by filing a petition for writ of common law certiorari, in the form prescribed by the Florida Appellate Rules, in circuit court, within 30 days of the decision sought to be reviewed.").

seeking district court review, the party may accept the agency action...and file suit in circuit court on the basis that denial was proper but resulted in an unconstitutional taking of the party's property." *Id.* at 160. Far from accepting the correctness or validity of the decisions of the CEB and permitting staff, Counts I – III all attack the validity of those decisions as "unlawful" because of the state court judgment against Plaintiff's neighbors.

Plaintiff did not challenge the City's arguments regarding her collateral attacks on administrative action when the City raised them in its Motion to Dismiss the Second Amended Complaint, and she has waived them now. Indeed, this Court accepted the City's arguments in this regard and dismissed her claims with prejudice. [Doc. 19 at 6]. This Court found that "Defendants argue that any relief under Count I would be an impermissible collateral attack on the administrative action of the City, and Plaintiff does not oppose the dismissal; thus, Count I is due to be dismissed with prejudice." [*Id.*].

All three Counts of the Fourth Amended Complaint are a clear collateral attack on the validity of the City's permitting and code enforcement decisions. But any relief provided by this Court pursuant to these Counts cannot be based on a finding that the CEB orders or staff's permitting decisions were invalid. To the extent that these Counts are dependent upon such a finding, they must be dismissed with prejudice. There would have to be another basis for granting relief that does not depend upon the invalidation of the City's actions. But, as

demonstrated below, Plaintiff cannot state any claim for relief that does not depend upon this Court's impermissible invalidation of administrative action.

> B.  Even if Plaintiff were permitted to collaterally attack the decisions of the CEB and permitting staff, she could not use the state court final judgment against her neighbors to do so because the City was not a party to that lawsuit and is not bound by that final judgment.

Assuming for the sake of argument that a collateral attack on administrative action is legally permissible, which it is not, Plaintiff could not rely on the state court final judgment entered against her neighbors to prove the invalidity of the City's actions in the instant lawsuit. The Fourth Amended Complaint makes numerous references to that judgment as a basis for attacking the validity of the CEB Orders and permitting decisions. She alleges that the state court final judgment "determined that the dock was lawfully permitted and approved by the City when originally constructed in the 1980's and that Carol has a prescriptive easement to the dock encroachment..." [Doc. 63 at ¶ 114].

However, the doctrines of res judicata and collateral estoppel prohibit the Plaintiff from using the state court final judgment against the City when the City was not a party to the state court lawsuit. The Eleventh Circuit has held that "[t]he party seeking to invoke collateral estoppel bears the burden of proving that the necessary elements have been satisfied." *Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989). "To invoke collateral estoppel, a party must demonstrate four elements: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the

determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) *the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.*" *Id.* (emphasis added).

Likewise, "*res judicata,* or claim preclusion, bars a subsequent claim when a court of competent jurisdiction entered a final judgment on the merits of the same cause of action in a prior lawsuit *between the same parties.*" *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998) (emphasis added). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue *with the same party or his privy* and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) (emphasis added).

Here, the Plaintiff chose *not* to sue the City in the state court lawsuit and the Myers, private citizens, are not the City's "privy." Indeed, once the City alerted Plaintiff in its Motion to Dismiss the Second Amended Complaint [Doc. 14 at 3], Plaintiff knew she could not sue the City in her state court lawsuit against the Myers because administrative action is not subject to collateral attack pursuant to declaratory relief actions. *See, supra,* pp. 8-12 of this Motion. As stated above, the City demonstrated in its Motion to Dismiss the Second Amended Complaint, and this Court accepted the proposition that "Plaintiffs who abandon their right to appeal code enforcement orders are prohibited from collaterally attacking those

orders pursuant to circuit court lawsuits." *Obloy*, 301 So. 3d at 1117; *see also* Doc. 14 at 3 and Doc. 19 at 6.

Therefore, the state court final judgment is not binding on the City and cannot be used in this litigation for any purpose. The findings in the state court litigation against Plaintiff's neighbors, the Myers, are binding only as between the Plaintiff and the Myers. The CEB orders and permitting decisions remain final, valid and enforceable. The validity of these actions are beyond reproach since Plaintiff failed to seek appellate review of these final decisions.

The existence of the CEB orders entered prior to the state court litigation further demonstrates why the subsequent final judgment against the Myers cannot apply here pursuant to a res judicata or collateral estoppel theory. The Supreme Court has explained that allowing collateral estoppel under such circumstances would be "unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane Hosiery*, 439 U.S. at 330.

Indeed, it would be unfair and unlawful for this Court to essentially reverse the prior final, un-appealed CEB orders and permitting decisions entered in favor of the City simply because of a subsequent state court judgment that was not entered against the City at all, but against entirely separate parties, the Myers. This Court must honor the final CEB orders that are binding as between the City and the Plaintiff. As stated above, to the extent that the Fourth Amended Complaint

depends upon a finding by this Court as to the validity of the permitting and code enforcement decisions, it must be dismissed with prejudice.

C.     Count I for a violation of the Eighth Amendment fails to state a cause of action and must be dismissed with prejudice.

Count I attempts to allege a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Courts have made clear that the Eighth Amendment addresses only "punishments inflicted after conviction for crimes." *Townsend v. Coffee Cnty., Ga.,* 854 F. Supp. 2d 1345 (S.D. Ga. 2011). The Eighth Amendment does not exist to allow a plaintiff to attack the validity of an underlying conviction. Instead, the Eighth Amendment may only be used to challenge whether the *punishment* for an offense, *i.e.,* the fines that were imposed, were excessive in light of the offense. The Eighth Amendment does not allow a plaintiff to overturn a conviction of guilt as to the offense charged, or in this case, the CEB order finding Plaintiff in violation of the Code.

A defendant seeking to overturn a conviction must rely on other constitutional grounds, such as due process violations, ineffective assistance of counsel, or insufficient evidence. However, as demonstrated above, Plaintiff waived the right to challenge the validity of the CEB orders by failing to timely appeal them. Indeed, Plaintiff was required to bring any Eighth Amendment challenge to the CEB order imposing the fines pursuant to a direct appeal in state circuit court rather than in this collateral proceeding in federal court. "[C]onstitutional claims...are properly cognizable on an appeal to the circuit court

from a final order of an enforcement board..." *Holiday Isle Resort & Marina Associates v. Monroe County*, 582 So. 2d 721, 721–22 (Fla. 3d DCA 1991). "[O]n appeal, *all* errors below may be corrected: jurisdictional, procedural, and substantive." *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 526, fn. 3 (Fla. 1995) (emphasis added).

Thus, Plaintiff could have raised any constitutional challenge, including an Eighth Amendment challenge, to the CEB Orders on direct appeal. She chose not to and has thus abandoned those remedies. *See, e.g., George v. United States*, 2020 WL 5507839, at *3 (M.D. Ala. 2020), *report and recommendation adopted*, 2020 WL 5503645 (M.D. Ala. 2020) ("George's Eighth Amendment claim also is procedurally defaulted. Where a substantive claim is not advanced on direct appeal, it is procedurally barred in a § 2255 proceeding.").

Even if a collateral attack were permissible, the Eighth Amendment's focus is on the appropriateness of the punishment and not the correctness of the conviction. This Court must accept that Plaintiff was correctly found guilty of the violations charged in the CEB Orders and focus solely on whether the punishment was excessive for those violations. The Fourth Amended Complaint alleges that the CEB order directed Plaintiff to correct the Code violations or a $100 per day fine would accrue until the violation was corrected. [Doc. 63, ¶ 64]. The law is well established that code violation fines in this daily amount are, as a matter of law, not grossly disproportionate to the code violation in which they were issued. *See,*

*e.g., Moustakis v. City of Fort Lauderdale*, 338 Fed.Appx. 820 (11th Cir. 2009); *Conley v. City of Dunedin*, 2010 WL146861 (M.D. Fla. 2010).

Florida Statutes § 162.09 empowers code enforcement boards to impose fines for code violations. Section 162.09 states that fines should not be in excess of $250 a day for first violations and not in excess of $500 a day for repeat violations. Fla. Stat. § 162.09(2)(a). There is a strong presumption that the amount of a fine is not unconstitutionally excessive if it lies within the range of fines prescribed by the Legislature. *Id.* at 821. The United States Supreme Court has held that substantial deference should be given to the Legislature in determining whether a fine is excessive in violation of the Eighth Amendment. *United States v. Bajakajian*, 524 U.S. 321, 336 (1998). Accordingly, the fines for the subject code violations are within those prescribed by Florida statute and are therefore, as a matter of law, not grossly excessive. *See Moustakis*, 338 Fed.Appx. at 822.

The mere fact that Plaintiff chose not to remedy the code violations by removing her dock or obtaining a permit, does not transform the relatively small daily fines into a constitutionally impermissible excessive fine. *Moustakis,* 338 Fed.Appx. at 822 ("[T]he $700,000 fine was created by the Moustakises' failure to bring the house into compliance with the Code each day for 14 years. Rather than being grossly disproportionate to the offense, *the $700,000 fine is, literally, directly proportionate to the offense."*) (emphasis added). Indeed, as held by the Southern District and affirmed by the Eleventh Circuit, "it would be contrary to reason and public policy to allow plaintiffs to evade responsibility simply by

neglecting to (or deciding not to) pay fines for so long a period of time that the cumulative amount owed becomes large enough for plaintiffs to argue unconstitutionally excessive punishment." *Moustakis v. City of Ft. Lauderdale*, 2008 WL 2222101, at *2 (S.D. Fla. 2008).

Under the same reasoning, the remedies pursued by the City, including the imposition of a lien, to obtain the fines directly proportional to the violation are not excessive. Plaintiff has cited no law that would prohibit a judgment creditor from filing a lien against property of the judgment debtor. To the contrary, the Fourth Amended Complaint expressly admits that Florida law allows such a lien. Paragraph 98 alleges, "Under Florida law the lien attaches to all of her real or personal property, not just the property at issue. Fla. Stat. 162.09(3)." [Doc. 63, ¶ 98]. Accordingly, Count I for violation of the Eighth Amendment must be dismissed with prejudice.

> D.    Counts II and III for a Fifth Amendment Taking fail to cure the deficiencies identified by this Court in its Order Dismissing the Second Amended Complaint.

Counts II and III attempt to alleged a Fifth Amendment taking caused by the City's permitting and code enforcement decisions. As demonstrated above, Plaintiff abandoned her appellate remedies. Pursuit of administrative and judicial appellate remedies may be abandoned only "if the aggrieved party is willing to accept all actions by the executive branch as correct." *Key Haven,* 427 So. 2d at 159. "Having completed review in the executive branch, if an aggrieved party does not wish to further contest the validity of the permit denial by seeking district court

review, the party may accept the agency action...and file suit in circuit court on the basis that denial was proper but resulted in an unconstitutional taking of the party's property." *Id.* at 160 (emphasis added). Considerations regarding the validity of governmental action may be a formula for "an inquiry in the nature of a due process, not a takings, test, and...it has no proper place in our takings jurisprudence." *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 540 (2005).

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." There are two categories of governmental takings: physical and regulatory. *Cedar Point Nursery v. Hassid,* 594 U.S. 139, 147-48 (2021). "The government commits a physical taking when it uses its power of eminent domain to formally condemn property" or where it "takes possession of property without acquiring title to it." *Id.* at 147 (citations omitted). Here, Plaintiff has not alleged the exercise of eminent domain or physical possession of her land or dock by the City.

Instead, Counts II and III attempt to allege a regulatory taking caused by the setback requirement and CEB order to obtain a permit or remove the dock. A regulatory taking may occur when the government "imposes regulations that restrict an owner's ability to use his own property...." *Id.* at 148 (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321–22 (2002)). Forms of regulatory takings include: (1) a *per se* regulatory taking; (2) an

as-applied taking pursuant to the *Penn Central* test; or (3) an "exaction." *Lingle,*
544 U.S. at 538-39, 546-47.

Count III attempts to allege the third form of regulatory taking, which is an
"exaction" or "unconstitutional condition." [Doc. 63 at 40].  A land use exaction
occurs where the government demands that a landowner dedicate an easement
allowing public access to property as a condition of obtaining a development
permit. *See Dolan v. City of Tigard,* 512 U.S. 374, 379-80 (1994); *Nollan v.
California Coastal Comm'n,* 483 U.S. 825 (1987).

Counts II and III for regulatory takings under the Fifth Amendment both fail
to demonstrate the necessary element of causation. A "§ 1983 claim requires proof
of an affirmative causal connection between the defendant's acts or omissions and
the alleged constitutional deprivation." *Spencer v. Benison*, 5 F.4th 1222, 1232
(11th Cir. 2021) (citations omitted). Here, Plaintiff alleges the lien imposed by the
CEB has prevented her from mortgaging her property and has destroyed its
economic value.  [Doc. 63, ¶ 149].

This Court, however, has already determined that the continuous accrual of
the fines and lien are not directly caused by enforcement of any Code provisions,
but rather by Plaintiff's refusal to comply with the CEB order:

> [T]he CEB Orders did not directly cause the takings of Plaintiff's
> property. The only reason the April 2019 CEB Order was imposed was
> because Plaintiff refused to comply with the original September 2018
> CEB Order. Thus, Plaintiff accrued the lien on her property—that has
> now effectively prevented her from selling or mortgaging her
> property—because of her "unilateral decision" to continue to violate the
> CEB Order that was issued over three years ago without seeking a

variance or any other available remedies. Hence, Plaintiff failed to sufficiently plead a direct causal connection between the City's setback regulation and the alleged taking over three years later as it was a consequential injury from the City's Orders. Therefore, Count IV will be dismissed without prejudice.

[Doc. 19 at 17-18]. Indeed, Plaintiff made the unilateral decision to defy the CEB order to remove her dock or obtain a permit,[2] which then resulted in the fines and lien. *See Spencer*, 5 F.4th at 1233-34; *L & W Constr. LLC v. United States,* 148 Fed. Cl. 417, 424 (2020) (a taking requires "intentional government conduct *directly* impacting private property. A mere causal link through the agency of a third force, perhaps appropriate in a tort context, is not sufficient to allege a taking.") (emphasis added).

Plaintiff's Fourth Amended Complaint reasserts her Fifth Amendment claims in Counts II and III but does nothing to cure the deficiencies identified by this Court in its Order dismissing the takings claim without prejudice from the Second Amended Complaint. [Doc. 19 at 16-18]. Instead, the takings claims alleged in the Fourth Amended Complaint depend entirely on Plaintiff's contention that the CEB orders were invalid. She continues to argue that her "dock was lawfully constructed" [Doc. 63, ¶¶ 134, 140] contrary to the findings of the CEB Orders. Thus, she has not accepted the validity of the CEB Orders at all. Her claim is premised on her contention that she had a right to oppose the CEB Orders to

---

[2] Had Plaintiff exercised her right to appeal the CEB Orders, she could have obtained a stay of the fines pending review. *See* Fla. R. App. P. 9.190(e)(3)-(4) ("A party seeking to stay administrative action…shall file a motion in the lower tribunal…A stay entered…shall remain in effect during the pendency of all review proceedings in Florida courts until a mandate issues…").

remove her dock. But she had no such right since she abandoned her appellate remedies. Thus, the resultant lien (the alleged taking) was caused entirely by her unilateral refusal to obey the Orders, as already found by this Court. [Doc. 19 at 16-18]. Therefore, this Court should grant the City's Motion to Dismiss the takings claim in the Fourth Amended Complaint with prejudice.

E.    Count III fails to demonstrate any "unconstitutional conditions," *i.e.,* an "exaction" under the Fifth Amendment.

In addition to failing to establish causation, Count III must be dismissed with prejudice because it fails to allege facts demonstrating an unconstitutional exaction or condition. Count I is entitled "Unconstitutional Conditions" and is brought pursuant to the Fifth Amendment and the Supreme Court's decisions in *Dolan* and *Nollan, supra.* [Doc. 63 at 40]. These cases permit Fifth Amendment takings claims based on an "exaction," but no exaction is alleged to have occurred in the Fourth Amended Complaint. A land use exaction occurs where the government demands that a landowner dedicate an easement allowing public access to property as a condition of obtaining a development permit. *See Dolan* 512 U.S. at 379-80 (permit conditioned on dedication of an easement allowing public access to property); *Nollan,* 483 U.S. at 828 (same). In *Dolan,* "the conditions imposed were not simply a limitation on the use petitioner might make of her own parcel, but a requirement that she deed portions of the property to the city." *Dolan* 512 U.S. at 385.

The Plaintiff here merely alleges that the City stated it would approve her building permits if Plaintiff complied with the Code regulations governing her dock. [Doc. 63, ¶¶ 44, 46]. The Plaintiff has failed to allege that the City received anything, let alone an easement on her property, in exchange for said compliance. If Plaintiff is correct, then anytime a City conditions a building permit on Code compliance it would be liable for a taking if the owner's refusal to comply with the Code requires a structure to be removed. This would undermine the very purpose of a Code which is to require landowners to comply with regulations for the safety and well-being of the public. If a landowner could erect structures in violation of the Code without having to remove them or come into compliance, the Code would be meaningless, and the City would be required to stand idly by while a nuisance remains endangering the public, lest it be liable for a "taking." Count III thus fails to demonstrate a taking based on an "exaction" or "unconstitutional condition." Instead, all Count III alleges is that the City required Plaintiff to comply with the Code before it would give her a building permit. The City received nothing in exchange for such compliance, let alone a public easement on her property. Count III fails as a matter of law and must be dismissed with prejudice.

## Local Rule 3.01(g) Certificate

The undersigned certifies that she conferred with counsel for the Plaintiff via e-mail on January 5, 2026, who objects to the relief requested herein.

WHEREFORE, Defendant CITY OF ALTAMONTE SPRINGS respectfully requests that this Court grant this Motion to Dismiss the Fourth Amended Complaint with prejudice.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 5, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to: Loren A. Seehase, Esq., Pacific Legal Foundation, 4440 PGA Blvd., Suite 307, Palm Beach Gardens, FL 33410, lseehase@pacificlegal.org; Adi Dyna, Esq., Pacific Legal Foundation, 3100 Clarendon Boulevard, Suite 1000, Arlington, VA 22201, adynar@pacificlegal.org; Michael D. Jones, Esq., Michael Douglas Jones, P.A., P.O. Box 196336, Winter Springs, FL 32719, mike@mdjonespa.com.

<div style="margin-left:40%">

*/s/ Jessica C. Conner*
JESSICA C. CONNER, B.C.S.
Florida Bar No. 0085145
Jessica.Conner@drml-law.com
DianaW@drml-law.com
S. RENEE STEPHENS LUNDY, ESQ.
Florida Bar No. 0501867
RLundy@drml-law.com
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel: 407-422-4310; Fax: 407-648-0233
Counsel for Defendant

</div>